CAROLINA CENTRAL GAS COMPANY v. CLAY HYDER AND WIFE, OLA
GRACE HYDER, AND W. O. McGIBONY, TRUSTEE.

(Filed 23 March, 1955.)

**1. Eminent Domain § 26—**

Ordinarily, a mere private easement for the purpose of ingress and egress
across agricultural lands does not deprive the owner of the fee of the full
enjoyment of his property not inconsistent of the rights granted in the
easement.

**2. Eminent Domain § 18e—**

Damages for an easement taken under eminent domain are to be deter-
mined by the rights the condemner or grantee actually acquires and not the
extent to which he exercises such rights.

**3. Same—Damages for easement must be assessed in accordance with rights
acquired without reference to possibility of nonuser.**

Under the stipulation of the parties, petitioner acquired an easement for
the purpose of laying, constructing, maintaining, altering, and repairing
pipelines, with right of ingress and egress over and across the said lands
and other lands of respondents, and with right to cut trees, underbrush,
and other obstructions that might interfere with the use of the easement.
*Held:* The trial court properly refused a requested instruction that the
petitioner would acquire only an easement in the land and that the respond-
ent might subject the land to any use not inconsistent with the use taken,
and properly instructed the jury that the compensation should be assessed
on the basis of the rights acquired and not on the basis of the petitioner's
subsequent exercise of such rights, and that the possibility of reversion to
petitioner for nonuser was too remote to be considered on the question of
damages.

**4. Same—**

The parties stipulated as to the measure and extent of the easement
acquired, which stipulations made no mention of any right reserved in
respondent to build a lake on the property which would back water over
the designated right of way, and it appeared that petitioner had refused
a reassessment reducing the damages in contemplation of the reservation
of such right in respondent. *Held:* The court properly followed the stipu-
lations of the parties in respect to the right of way acquired, and correctly
refused to give an instruction as to damages if respondents were permitted
to build the contemplated lake, since the court may not make the contract
for the parties.

BARNHILL, C. J., and DEVIN, J., took no part in the consideration or decision
of this case.

APPEAL by petitioner from *Nettles, J.,* November Term, 1954, of
HENDERSON.

The petitioner instituted this proceeding pursuant to the provisions of
Chapter 40 of the General Statutes, for the purpose of obtaining a 50-foot

right of way through the 104-acre farm of the respondents for a distance of approximately 2,000 feet, within which area the petitioner had already laid its pipeline. The land lies some two and one-half miles north or northeast of the City of Hendersonville, near or adjacent to Clear Creek Road.

Commissioners were duly appointed and qualified to ascertain and assess the amount of damages the respondents will suffer, if any, from the taking and use of the right of way by the petitioner. The damages were assessed at $4,000. The petitioner filed exceptions to the commissioners' report, which were overruled. Thereafter, counsel for the respective parties undertook to work out a compromise settlement and agreed to recommend to their respective clients the sum of $2,700. Whereupon, the commissioners were requested to re-assess the damages in that amount. They did so, after being assured that the petitioner did not seek a right of way that would prevent the flooding thereof by the construction of a lake or prevent the owners from using the right of way for any purpose they might desire, except for the construction of a house directly over the pipeline. The petitioner, however, declined to approve the agreement and filed exceptions to the report which were overruled, and the report was confirmed. The petitioner appealed to the Superior Court.

When the case was called for trial, counsel for the petitioner and the respondents stated to the court that at a pre-trial conference, they had entered into certain stipulations which limited the trial to one issue, to wit: What amount of damages, if any, are the respondents entitled to recover from the petitioner? The stipulations, in brief, included the following: The petitioner is a public utility company and has the power and authority to take and appropriate the lands in question for its pipeline; that the respondents are the owners in fee of the lands so taken; that the petitioner and respondents having been unable to agree as to the compensation petitioner should pay to the respondents, this proceeding has been duly and properly instituted. ". . . that the specific use of said land is a right of way and easement for the purpose of laying, constructing, maintaining, operating, repairing, altering, replacing and removing pipelines in connection with the business of the said petitioner. . . . That the petitioner's further use of said land is to replace one or more additional lines of pipe approximately parallel with the first pipeline laid by said petitioner or to remove and change the size of said pipeline with all other rights herein granted, including but without limiting the same to, the free and full right of ingress and egress over and across said lands and other lands of the respondents to and from said right of way and easement, and the right from time to time to cut all trees, undergrowth, and other obstructions that may injure, endanger or interfere with the construction, operation, maintenance and repair of said pipelines."

The evidence as to the value of the respondents' land before and after the taking, was in sharp conflict. Evidence was offered to the effect that the location of the pipeline had destroyed a very valuable lake site, passed through a heavily timbered section of the farm, and destroyed several valuable building sites. The petitioner introduced evidence to the effect that to have gas available for residences or industrial enterprises had enhanced the value of the respondents' property to the extent of several thousand dollars. Upon motion of petitioner and over the protest of the respondents, the court in its discretion permitted the jury to go out and view the premises. The jury assessed respondents' damages at $6,000. Judgment was accordingly entered against the petitioner and in favor of the respondents for that amount, and the petitioner was granted a right of way 50 feet in width across the lands of the respondents, as described by metes and bounds in the stipulations entered into by counsel, and to the extent, scope, and character set out therein as set forth above. The petitioner appeals, assigning error.

*L. B. Prince for petitioner, appellant.*

*B. A. Whitmire and M. M. Redden for respondents, appellees.*

DENNY, J. The petitioner assigns as error thirty exceptions to rulings of the court in the course of the trial below. However, we deem it necessary to discuss only those which present these questions. (1) In view of the rights acquired by the petitioner, was it error to refuse to instruct the jury that, "When land is appropriated under the power of eminent domain for a right of way or easement, the condemner acquires an easement only in the land so taken, and the fee of the property remains in the landowner, who may subject the land to any use which is not inconsistent with its use for the purpose for which it is taken"? (2) Did the court commit error in instructing the jury that it should disregard testimony as to the value of the respondents' property if they were permitted to build a lake over the condemned right of way, and in refusing to permit the witness Dalton to give his opinion to the jury as to the damage to the property if the lake could be constructed? (3) Did the court err in giving the following instructions to the jury? "As a consequence, compensation is to be assessed by you members of the jury in this case on the basis of the rights acquired by the condemner at the time of the taking, and not on the basis of the condemner's subsequent exercise of such rights. It is well settled that the respondent is entitled to recover not only the value of the land taken, but also the damages thereby caused to the remainder of the land. Even if the petitioner should not use the entire right of way, the rule would be the same as it is not what the petitioner actually does, but what it acquires the right to do, that determines the amount of dam-

ages. Since the condemner acquires the complete right to occupy and use all the land covered by the perpetual easement for all time to the exclusion of the landowner, the bare fee remaining in the landowner is, for all practical purposes, of no value, and the value of the perpetual easement acquired by the condemner is virtually the same as the value of the land embraced by it. The petitioner cannot demand a perpetual easement with one breath and insist with the next that he be excused from paying full compensation for the perpetual easement on the ground there is a bare possibility that he may abandon the perpetual easement on some uncertain day. This is true because the law of Eminent Domain deems the possibility of the abandonment of a perpetual easement by the nonuser so remote and improbable that it will not allow the contingency to be taken into consideration in determining the value of the easement."

The first and third questions may be considered together. Ordinarily, a mere private easement for the purpose of ingress and egress across agricultural lands carries with it no implication of a right to deprive the owner of the fee to full enjoyment of his property. The use, however, must be such as not to materially impair or unreasonably interfere with the exercise of the rights granted in the easement. *Light Co. v. Bowman,* 229 N.C. 682, 51 S.E. 2d 191, and cited cases; *Chesson v. Jordan,* 224 N.C. 289, 29 S.E. 2d 906; 18 Am. Jur., Eminent Domain, section 115, page 741, *et seq.* See also Anno. 68 A.L.R. 837.

*Barnhill, J.,* now *Chief Justice,* pointed out, however, in *Chesson v. Jordan, supra,* that, "Generally speaking, the nature of the easement acquired rather than the character of the use must control the rights of the parties. Hence, no hard and fast rule may be prescribed. Each case must be controlled, in large measure, by the particular facts and circumstances being made to appear." In other words, in assessing damages for easement rights, it is not what the condemner or grantee actually does, but what it acquires the right to do that determines the *quantum* of damages. *R. R. v. McLean,* 158 N.C. 498, 74 S.E. 461; *R. R. v. Land Co.,* 137 N.C. 330, 49 S.E. 350, 68 L.R.A. 333, 107 Am. St. Rep. 490.

In the instant case, the nature of the easement is stipulated and does not purport to limit the petitioner's use to the exercise only of such rights as may be reasonably necessary to carry out the purposes for which the easement is sought. On the contrary, the judgment entered in this cause grants the right of way sought by the petitioner as set out by metes and bounds in the stipulations, and further recites that, "The right of way hereby awarded includes all of the rights allowed by law and specifically includes the right of way and easement for the purpose of laying, constructing, maintaining, operating, repairing, altering, replacing and removing pipelines in connection with the business of the petitioner, *and including, but without limiting the same to, the free and full right of*

*ingress and egress over and across said lands and other lands of the respondents to and from said right of way and easement, and the right from time to time to cut all trees, undergrowth and other obstructions that may injure, endanger or interfere with the construction, operation, maintenance and repair of said pipelines.*"　(Emphasis added.)

Therefore, in light of these provisions, we think the requested instructions were properly refused and that the instructions complained of were not prejudicial to the petitioner. *Proctor v. Highway Commission,* 230 N.C. 687, 55 S.E. 2d 479; *Highway Commission v. Black,* 239 N.C. 198, 79 S.E. 2d 778.

The second question must likewise be answered in the negative. Damages as compensation for the taking were to be determined in light of the rights granted in accordance with the stipulations entered into by the respective parties. As to whether the damages should have been mitigated by permitting the respondents to build a lake and back water over the condemned right of way, was a question for the respondents to determine, not the court. The court had no authority to contract for the parties in this respect. *Proctor v. Highway Commission, supra.*

Moreover, it should be kept in mind that the petitioner refused to accept a re-assessment of the damages, which reduced the amount previously assessed by $1,300, on the ground that the respondents be permitted to build a lake that would back water over the designated right of way, and appealed to the Superior Court from the order confirming the re-assessment. Furthermore, in a pre-trial hearing in this proceeding, the parties entered into certain stipulations. These stipulations fixed the nature and scope of the designated right of way and made no mention of the respondents' right to build a lake that would cover it. In fact, the petitioner in its brief states that, ". . . while the respondents may be, under the present judgment, deprived of using it as a lake site, the result of its decision would result in an economical loss to the community since certainly the petitioner is not going to use it as a lake site, and could not under the law as it did not acquire this right."

We cannot agree with the above reasoning. The judgment entered in the court below, with respect to the right of way granted, simply follows the stipulations of the parties in that respect. If the petitioner is getting more than it wants, such fact flows from the stipulations made by the parties themselves and cannot be charged to any action of the court in connection with the trial below.

In *Proctor v. Highway Commission, supra,* the Highway and Public Works Commission entered the land of the petitioner and appropriated a portion of the same to public use as a right of way for a highway. Parts of the petitioner's residence and store stood on the right of way taken by the respondent. The respondent insisted that it had proposed that the

petitioner might move the buildings on the right of way at her own expense and that the court should coerce removal by the petitioner by means of a judgment impounding a portion of the recovery. We said: "Whether the presence of parts of the dwelling and store on the right of way interfered with the free exercise of the easement condemned was for the determination of the respondent. Whether she (petitioner) should accept the proposal of the respondent that she remove these parts of the buildings from the right of way to her remaining lands at her own expense, was for the decision of the petitioner. These things were not concerns of the court."

The trial below seems to have been free from prejudicial error, and the result will not be disturbed.

No error.

BARNHILL, C. J., and DEVIN, J., took no part in the consideration or decision of this case.