James W. Turner

*v.*

State Compensation Commissioner
and
New River & Pocahontas Consolidated Coal Co.

(No. 12132)

Submitted January 10, 1962.     Decided January 30, 1962.

Given, Berry, Judges, concurring.

*R. L. Theibert*, for appellant.

2

*Mahan, Higgins, Thrift & Graney, Patrick C. Graney, Jr.,*
for appellee.

BROWNING, JUDGE:

On petition of the New River and Pocahontas Consolidated Coal Company, hereinafter designated as the "employer", this Court granted an appeal to an order of the Workmen's Compensation Appeal Board affirming an order of the State Compensation Commissioner by which James W. Turner, hereinafter referred to as claimant, was granted the statutory benefits for silicosis in the first stage.

Claimant filed his claim for silicosis benefits with the Workmen's Compensation Fund on July 8, 1959, attaching in support thereof a physician's report by Dr. Donald C. Newell stating that he believed claimant to have contracted the disease of silicosis and that his capacity for work had been thereby impaired 25-30 percent. Under the statutory definition this would be equivalent to a finding of silicosis in the second stage. On the basis of claimant's application, the report of Dr. Newell and the report of the employer, the Commissioner, pursuant to the provisions of Code, 23-4-15b, as amended, made non-medical findings to the effect that claimant had been employed: by the Pine Top Coal Company, as a hand loader, from February 5, 1959, to April 1, 1959; by the New River and Pocahontas Consolidated Coal Company, as a coal loader, from December 15, 1952, until March 26, 1958; by Milburn By-Products, as a coal loader, from October 17, 1930, until October 29, 1952; and by several other mines in West Virginia, beginning in 1924; that: claimant had been exposed to the hazard of silicon dioxide dust for a continuous period of not less than sixty days while in the employ of the New River and Pocahontas Consolidated Coal Company within two years prior to the filing of his claim; that he had been exposed to such hazard in West Virginia over a continuous period of not less than two years during the ten years immediately preceding the date of his last exposure thereto; and, referred the claim to the Silicosis Medical Board, which findings and referral were set forth in an order dated July 27, 1959.

This order was protested by the employer and, at the

hearing pursuant to such protest, held on September 10, 1959, it was developed that claimant had been employed by the Pine Top Coal Company from February 5, 1959, to April 28, 1959. The Commissioner thereupon obtained an employer's report from Pine Top giving the date claimant had ceased employment with it as of March 26, 1959, and again, on November 16, 1959, entered an order making his non-medical findings, the only change therein from his previous order being that claimant was employed by Pine Top from February 5, 1959, to March 26, 1959, instead of from February 5, to April 1, 1959. The employer protested this order and requested that the claim be set for another non-medical hearing, however, the record does not disclose that a hearing was ever held pursuant to such protest.

On March 5, 1960, counsel for New River and Pocahontas Consolidated Coal Company wrote the Commissioner reciting the protest to the order of November 16, 1959, the claimant's statement at the hearing in September, 1959, that he had ceased work for Pine Top in the latter part of April, 1959, and enclosed photostatic copies of pay statements rendered by Pine Top Coal Company to the claimant, showing the last payment date to claimant as April 25, 1959. The letter concluded: "in view of the fact that the same will likely soon be set for another hearing, we should like to request the Commissioner to enter an order making Pine Top a party in order that it may receive notice of the next hearing and defend, if it desires to do so, upon the question of exposure."

The Commissioner then, on March 11, 1960, amended the order of November 16, 1959, to show claimant's employment with Pine Top as having been from February 5, 1959, to April 25, 1959, however, the Commissioner did not amend that order to find that claimant had been exposed to the hazard of silicon dioxide dust for not less than sixty days while in its employ.

In June, 1960, claimant was ordered to appear before the Silicosis Medical Board for examination, and on June 29, 1960, the Board, on the basis of X-ray studies made at Oak Hill Hospital in 1952, the X-ray films of Dr. Newell, made

in 1959, and the X-ray films made in the course of its own examination, found that claimant was suffering from silicosis in the first stage but that he "was not exposed to injurious quantities of silicon dioxide while in the employ" of either Pine Top or New River. The Board further found "that there has been no progression of the disease in the lung fields indicating that there has been no aggravation. The findings are identical for the years 1952, 1959 and the present studies." Submitted with the Board's findings was a report by Drs. Jones and Squire, made at the request of the employer, wherein they concluded:

"1. Early silicosis, with no impairment of capacity for work therefrom. 2. No evidence of progression or aggravation since 1952." Included in this report was the notation: "exercise tolerance: Following exercise, there is no evidence of pulmonary disability."

The findings of the Silicosis Medical Board were protested and the claim set for hearing. At this hearing, the members of the board were asked to compare the X-ray films of 1952 with those of 1960. Dr. Elkin testified that there "is no substantial difference between these films." Dr. Grisinger testified: "I think these films are comparable, and I do not see any difference in the lung changes on the two films. I question very seriously that one could point to any marked difference if any at all, on the two films." Dr. Stewart concurred. Dr. Elkin, when asked whether a person might be exposed to the hazard of silicon dioxide dust over a period of five and one-half years without such being apparent on X-ray, stated: "It has been our experience that a goodly number of these cases will show progression over an interval of five years, and many of them won't even though they continued in the same employment where they obviously got a very similar exposure." He again answered, in response to a question as to whether, if a man were subjected to harmful exposure every work day for a number of years, there would be a steady increase in the "markings" of his lungs: "We have never felt that we could demonstrate uniformly progressive changes."

As heretofore stated the Commissioner granted the claim-

ant benefits for silicosis in the first stage, the Appeal Board affirmed, and the employer appealed to this Court.

It is the contention of the appellant that upon this record and the pertinent statutory provisions the order of the Board is clearly wrong for the reason that the claimant failed to prove by a preponderance of the evidence that his exposure, if any, to silicon dioxide dust while employed by the New River and Pocahontas Consolidated Coal Company "perceptibly aggravated" the silicotic condition from which he admittedly was suffering when first employed by this company. The appellee, however, maintains that the so-called non-medical findings of the State Compensation Commissioner under date of July 27, 1959, to the effect that "claimant was exposed to the hazard of silicon dioxide dust for a continuous period of not less than sixty days while in the employ of New River & Pocahontas Consolidated Coal Company, within two years prior to the filing of his claim, and that he had been exposed to such hazard in West Virginia over a continuous period of not less than two years during the ten years immediately preceding the date of his last exposure thereto," are controlling since the employer at a non-medical hearing thereafter offered no evidence to refute such findings.

In arriving at its decision in this case this Court has carefully considered three sections of the West Virginia Code, namely, 23-4-15b, 23-4-8c and 23-4-1, all as amended, and concludes that they are pari materia. 23-4-15b provides in part that "If a claim for silicosis benefits be filed by an employee, the commissioner shall determine whether the claimant was exposed to the hazard of silicon dioxide dust for a continuous period of not less than sixty days while in the employ of the employer within two years prior to the filing of his claim, and whether in the State of West Virginia the claimant was exposed to such hazard over a continuous period of not less than two years during the ten years immediately preceding the date of his last exposure thereto . . . ." 23-4-8c relates to the findings and conclusions of the Silicosis Medical Board after a claim has been referred by the Commissioner to that body. This is the pertinent language of that section:

"  .  .  .

"The findings and conclusions of the board shall set forth, among other things, the following:

"(a) Whether or not the claimant or the deceased employee has contracted silicosis, and, if so, the stage thereof, . . .

"(b) If the claimant or the deceased employee has contracted such disease, whether or not the exposure in the employment was sufficient to have caused silicosis or to have perceptibly aggravated an existing silicosis.

"(c) What, if any, physician appeared before the board on behalf of the claimant, and what, if any, X-rays were produced by or on behalf of the claimant, and what, if any, physician appeared before the board on behalf of the employer, and what, if any, X-rays were produced by or on behalf of the employer."

23-4-1 provides that "the commissioner shall disburse the workmen's compensation fund to the employees of such employers as are not delinquent in the payment of premiums for the quarter in which the injury occurs,". Thereafter it further provides that "For the purposes of this chapter the terms 'injury' and 'personal injury' shall be extended to include silicosis and any other occupational disease as hereinafter defined, and the commissioner shall likewise disburse the workmen's compensation fund to the employees of such employers as are not delinquent in the payment of premiums for the last quarter in which such employees have been exposed to the hazard of silicon dioxide dust or to any other occupational hazard, and have contracted silicosis or other occupational disease, or have suffered a perceptible aggravation of an existing silicosis, . . . ." In the same section is this pertinent paragraph: "Whenever the expression 'injurious exposure to silicon dioxide dust', or 'injurious exposure to silicon dioxide dust in harmful quantities', or 'exposure to the hazard of silicon dioxide dust', or any similar language shall appear in this chapter, such expression shall be construed to mean the exposure of an employee in the course of his employment to a working condition in which the air contains such a concentration of silicon dioxide dust that the breathing of such air by a person over a long period

of time would be likely to cause him to contract the disease of silicosis."

This Court finds that when these pertinent statutory provisions are read together that it is not sufficient for a claimant to show that he was suffering from silicosis in the first stage and thereafter for a period of five and one-half years or more "was exposed to the hazard of silicon dioxide dust". The record must show not only that the exposure to silicon dioxide dust "was *sufficient* to have caused silicosis or to have perceptibly aggravated an existing silicosis," but that such exposure *did* cause silicosis or perceptibly aggravate an existing silicosis. (Italics supplied.) There is no contention in this case that the claimant contracted silicosis while employed by this employer and there is no evidence in this record upon which the Commissioner or the Appeal Board could base a decision that his silicotic condition was "perceptibly aggravated" while employed by this employer.

The case of *Henley v. Compensation Commissioner et al.,* 129 W. Va. 15, 38 S. E. 2d 380, upon which the appellee strongly relies, is distinguishable from the instant case. The issue in the *Henley* case was whether the claimant had been "injuriously exposed to silicon dioxide dust in harmful quantities" in the employ of his employer within the one-year [now two-year] period prior to filing his application for silicosis benefits. The Silicosis Medical Board held that the claimant had not been so exposed and relied upon X-ray films of the claimant's chest, one made "about six months after the beginning of the one-year period prior to filing of the claim, and the other about five months after the filing of the claim". This Court held in the *Henley* case that since the claimant had been employed by the same employer in the same mine from 1929 until he ceased work in 1945 and had been exposed to silicon dioxide dust in that mine to the extent of developing the disease of silicosis, and since the evidence that he had worked from 1934 until 1945 in the same kind of work, and under the same conditions, in that mine was unrefuted, the claimant had complied with the statute as then in effect by filing his application within the proper time. It would not have been sufficient in the *Henley* case for the claimant to have shown that he was exposed

to the hazard of silicon dioxide dust through all those years if at the end of that time he had not contracted the disease of silicosis. The same is true where a claimant attempts to establish a perceptible aggravation of a pre-existing silicosis.

The issue presented upon the record in this case was decided by this Court on May 1, 1956, in the case of *Kelly* v. *State Compensation Commissioner and Gulf Mining Company*, by an order, prepared by Judge Lovins, entered on that day, no opinion having been written. I quote some pertinent statements from that order: "And it appearing to the Court that the claimant was suffering from the disease of silicosis in the first stage prior to entering the employment of the Gulf Mining Company; that the claimant has not suffered any perceptible aggravation of the disease since entering such employment; . . . It is therefore considered that the order of the Workmen's Compensation Appeal Board of December 20, 1955, affirming the order of the State Compensation Commissioner of September 20, 1955, be, and the same is hereby reversed; and the order of the State Compensation Commissioner awarding silicosis benefits is likewise set aside."

In so holding in the instant case, that is, that the claimant has failed to show any perceptible aggravation of his preexisting silicosis, we do not mean to imply that the evidence provided by comparison of the X-ray films of 1952 with those of 1959 and 1960 is conclusive upon this question. See *Henley* v. *Compensation Commissioner et al.*, 129 W. Va. 15, 38 S. E. 2d 380. "Perceptible" is defined by Webster's New International Dictionary, Second Edition, as "Capable of being perceived; cognizable; discernible." It is elementary that the debilitating effects of an insidious disease may be discerned or perceived in ways other than by X-ray, the foremost example, but not necessarily the only one, being by physical examination. In this regard, the only evidence in the instant case as to the general physical condition of the claimant is the report of Drs. Jones and Squire, wherein it is stated: "Following exercise, there is no evidence of pulmonary disability." It is true that Dr. Newell stated that he believed claimant to be 25-30 percent disabled but the basis

for such belief is not shown and his report shows that, due to a severe head cold, claimant was not subjected to an exercise tolerance test. Thus, while the X-ray comparison is not conclusive, and while it is not necessary that a claimant, suffering from first stage silicosis, progress to the second stage thereof, that is, with impaired capacity for work, it is necessary for the claimant to show some "perceptible" aggravation, no matter how slight, in his condition within the requisite time period in order to be entitled to benefits. Suffice to say, the record in the instant case is devoid of any such showing.

The order of the Workmen's Compensation Appeal Board of July 10, 1961, and the order of the State Compensation Commissioner of March 14, 1961, awarding the claimant compensation benefits for silicosis in the first stage are reversed and the case remanded.

*Reversed and remanded.*

GIVEN, JUDGE, concurring:

As pointed out in the Court's opinion, the facts of the instant proceeding bring it squarely within the holding in *Kelly* v. *State Compensation Commissioner*. In that proceeding, as in the instant proceeding, the employee contracted the disease silicosis while in the employ of a former employer, but failed to establish any perceptible aggravation of the disease as to an exposure occurring under the last employer. The Court denied the employee any award as to either employer, notwithstanding the necessary "exposure" was established as to a prior employer. In the order entered therein Judges Riley and Given dissented, saying they believed "that claimant is entitled to an award of silicosis benefits in the first stage; that the naming of former employers by claimant in his application for compensation has the effect of making such former employers parties to the proceeding", and that the case should be remanded "for further development, especially as to the question of chargeability of the claim".

I see no objection to the action of the Court, in the instant proceeding, in reading the several pertinent statutory pro-

visions together but, when so read and considered they can not have the force of destroying certain clear, mandatory provisions found in Code, 23-4-1, as amended, which provide that "An application for benefits on account of silicosis shall set forth the name of the employer or employers and the time worked for each", and "allocate to and divide any charges * * * among the employers", and that "The allocation shall be based upon the time and degree of exposure with each employer". It is significant that the allocation or charge "shall be based upon the time and degree of exposure", not upon any proportional degree of aggravated disability. A truism, no one could believe the Legislature intended to direct that a charge be made against an employer against whom no liability had been created.

Even though some reasonable basis exists for the Court's holding, which I can not discover, to the effect that the Legislature intended that the charge should be made according to the degree of disability or aggravation instead of "degree of exposure", there still remains no valid basis for precluding the employee from recovering as to the former employer, against whom the exposure and occurrence of first stage silicosis has been definitely established. In *Rogers* v. *State Compensation Commissioner*, 140 W. Va. 376, 84 S. E. 2d 218, this Court held that the "workmen's compensation fund * * * is chargeable against the account of his employer when the employee, in this State, has been *exposed* to the hazard of silicon dioxide dust * * *". (Emphasis supplied).

While the motive or purpose of the Legislature in enacting the pertinent statutory provisions may be immaterial, it may be that the insidious nature of silicosis served as a basis therefor. Of many employees subjected to the same exposure, only one may contract the disease; or, of two or more who may contract the disease, as to one the disease, without medical attention, may become completely arrested in first stage, but, in spite of the best medical care, as to others, may advance to second or third stage; and, in fact, as shown by the record herein, may so advance whether or not the exposure is continuous. If the Legislature believed the most just way to "allocate" or "charge" the accounts of employers was according to "time and degree of

exposure with each employer", this Court should not say otherwise.

Moreover, the decision in the *Kelly* case in effect held that perceptible aggravation must be affirmatively shown regardless of the amount of additional exposure in harmful quantities, in order to come within the provisions of Code, 23-4-8c, subsection (b), as amended, and inasmuch as the decision as to the failure to prove aggravation was based on x-ray pictures of the claimant, I would hold that upon proof of exposure in harmful quantities of a claimant who already has silicosis in the first stage, such aggravation may be presumed. This reasoning is based on the medical evidence contained in this case that x-rays do not always indicate aggravation when silicosis has already been contracted.

Nevertheless, so long as the holding in the *Kelly* proceeding remains the law of this State, I am forced to concur in the result announced by the Court in the present proceeding.

I am authorized to say that Judge Berry concurs in this memorandum.